ANNIE HARDING *vs.* MARY L. LITTLEHALE & another.

Bristol.     October 24, 1889. — November 12, 1889.

Present: DEVENS, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Beneficiary Association — Contract — Beneficiary — Trust.*

Under the St. of 1885, c. 183, a beneficiary association may insure a member for his own benefit, in which case the proceeds of the certificate after his death will go to his executor or administrator as a part of his estate.

A beneficiary association, organized in 1878 and having no by-laws relating to its contracts with its members, after the passage of the St. of 1885, c. 183, received an application for membership in which the applicant, in reply to the question

"For whose benefit is this contract made ? " wrote "Myself," and thereupon a certificate was issued to him on a printed blank, reciting in print that upon his death the proceeds thereof would be paid "to the executors or administrators of said member, in trust, however, for, and to be forthwith paid over to, his heirs at law." *Held*, that the certificate was issued in pursuance of the powers conferred by that statute, and that the proceeds thereof after the member's death formed a part of his estate to be disposed of under his will.

BILL IN EQUITY in the nature of an interpleader, filed in the Superior Court on September 3, 1888, by the executrix of the will of Henry A. Whitten, against Mary L. Littlehale, his daughter, and Sarah A. Whitten, his wife, for instructions as to the disposition of the proceeds of a certificate of membership held by him in a beneficiary association. The case was heard by *Brigham*, C. J., and was as follows.

Henry A. Whitten on October 15, 1885, applied for membership in the Massachusetts Benefit Association, a corporation organized in 1878, under the provisions of the St. of 1874, c. 375, and the St. of 1877, c. 204. His application, which was signed by him and was attested by an agent of the association, besides particular directions to agents and questions to be answered by them as well as by a medical examiner, recited that Whitten made the statements which appeared over his signature " as the basis of the contract between said Massachusetts Benefit Association and myself." After the question " For whose benefit is this contract made (give relationship of beneficiary and full name) ? " was written the word " Myself." The association thereupon issued a certificate of membership to Whitten, which, with the exception of the date and the signatures of its officers, and Whitten's name and residence and the sums of money paid by him, consisted of what purported to be the printed form of certificate used by the association. This certificate recited that Whitten agreed " to accept the following conditions and rules as a part of this contract between said association and himself," and that the association had constituted Whitten " a benefit member of said association, and agrees to pay, in ninety days after there shall have been furnished to said association satisfactory proof of a valid claim under this contract, consequent upon the death of said member, to the executors or administrators of said member, in trust, however, for, and to be forthwith paid over to, his heirs at law, the sum

of three thousand dollars." Among the conditions and rules referred to were the following:

"First. That the statements and declarations made by and on behalf of said member in his application to become a benefit member of said association, which are hereby referred to as the basis of this contract, and are a part thereof, and on the faith of which this certificate is issued, are in all respects true, and that no fact has been suppressed relating to his health or circumstances affecting the character of the risk, or the judgment of the association in accepting the same. . . .

"Third. The death claim shall be payable in ninety days after there shall have been furnished to said association satisfactory proof of a valid claim under this contract, consequent upon the death of said member, . . . on and in accordance with the blanks furnished by the association, and such other information as the association shall require, and no officer of said association is authorized to waive any requirement of this clause. . . .

"Sixth. Within forty days after the issuing of this certificate, the said party to whom it is issued shall pay an assessment of seven $\frac{5}{100}$ dollars, to be deposited as part of the Emergency Fund required by the laws of this Commonwealth, and upon the death of any member of the association he shall at once pay, if required, to its treasurer, an additional assessment of seven $\frac{5}{100}$ dollars, which can be used only for the payment of death losses and for the Emergency Fund, as authorized by law. . . .

"Twelfth. Each applicant to become a member must sign the association's form of application therefor, filled out by himself or some one on his behalf, pass a satisfactory examination by one of the association's regularly appointed medical examiners, and pay to him his fee for such examination. No agent of this association is authorized to make, fill up, or alter any such application; in doing any such act he is to be taken and considered as the agent of the applicant, and not of the association."

The association never had any by-laws relating to the contracts between it and its members. Whitten made a will, in which he named the plaintiff as his executrix, and bequeathed the proceeds of such certificate to her, and subsequently died. The plaintiff duly collected the proceeds of the certificate, and still holds them in her hands. Mary L. Littlehale, who was the

only daughter of Whitten, contended that she was entitled to the proceeds of the certificate as his heir at law, and that the plaintiff held such money in trust for her; and Sarah A. Whitten, his wife, contended that such proceeds formed a part of his estate, and that she was entitled to the same.

The judge made a decree that such proceeds formed a part of the estate of Whitten, and that the plaintiff was entitled to them under his will, and reported the case for the determination of this court.

*W. C. Parker*, for Mary L. Littlehale.

*E. L. Barney*, for Sarah A. Whitten.

*L. LeB. Holmes*, for the plaintiff.

KNOWLTON, J. The St. of 1885, c. 183, made important changes in the law relative to life and casualty insurance on the assessment plan. Section 1 is as follows: " Every contract whereby a benefit is to accrue to a party or parties named therein upon the death or physical disability of a person, which benefit is in any degree or manner conditioned upon the collection of an assessment upon persons holding similar contracts, shall be deemed a contract of insurance on the assessment plan, and the business involving the issuance of such contracts shall be carried on in this Commonwealth only by duly organized corporations, which shall be subject to the provisions and requirements of this act; but nothing herein contained shall be construed as applicable to organizations which conduct their business as fraternal societies, on the lodge system, or to organizations which do not employ paid agents in soliciting business, or limit their certificate holders to a particular order or fraternity, or to the employees of a particular town or city, designated firm, business house, or corporation; or to organizations which are unincorporated and limit the amount of every certificate issued to a maximum amount, not exceeding five hundred dollars on any one risk. If the benefit is to accrue through the death of the insured person, the contract shall be of life insurance; if through the accidental death only, or the physical disability from accident or sickness of the insured, it shall be of casualty insurance."

In the first part of the section is a broad and comprehensive definition of insurance on the assessment plan. The last part

of the section marks the distinction between life insurance and casualty insurance. In the middle of the section certain classes of organizations are excepted from the provisions of the act. Section 2 provides for the formation of corporations to carry on the business of life or casualty insurance on the assessment plan. Section 3 relates to existing corporations engaged in transacting that business, and authorizes the reincorporation of such corporations, with a proviso " that nothing in this act contained shall be construed as requiring or making it obligatory upon any such corporation to reincorporate, and any such corporation may continue to exercise all rights, powers, and privileges conferred by this act or its articles of incorporation not inconsistent herewith, the same as if reincorporated hereunder." This section gives existing corporations all the benefits of the statute without their taking formal action of any kind, or making any change further than may be necessary to comply with the requirements of the act as to their management and the transaction of their business. It includes all corporations coming within the definition contained in § 1.

Under this statute there can be no doubt that a corporation may insure an applicant for his own benefit, and that in such a case the proceeds of the certificate after his death will go to his executor or administrator, for the benefit of his estate. The provisions of §§ 10 and 11, which forbid insurance for the benefit of persons who have no interest in the insured life, and exempt from attachment the money to be paid under the certificate, are not inconsistent with this construction. The limitations of the St. of 1874, c. 375, and of the St. of 1877, c. 204, § 1, (Pub. Sts. c. 115, § 8,) as interpreted in *American Legion of Honor* v. *Perry,* 140 Mass. 580, and in *Daniels* v. *Pratt,* 143 Mass. 216, are not applicable to a certificate issued under this statute.

The next question in the case is whether the certificate before us was so issued. The corporation which issued it was organized in 1878, under the provisions of the St. of 1874, c. 375, and of the St. of 1877, c. 204. It never had any by-laws in relation to the contracts between it and its members. There is nothing to indicate that it belonged to either of the classes of organizations excepted in § 1 of the statute which we have been considering. On the contrary, there are indications in the certificate and in the

application which fairly show, in connection with the report, that it belonged to neither of these classes. The sixth of the rules and conditions contained in the certificate provides for the accumulation " of the Emergency Fund required by the laws of this Commonwealth," and shows that the corporation was acting under this statute, in compliance with the provisions of § 8. In other particulars the certificate is made to conform to the requirements of the chapter, and the contract must be deemed to have been made by a corporation doing business with the enlarged powers conferred by recent legislation.

Construing the certificate under the statute of 1885, it remains to inquire whether it provides a fund for the heirs of the insured as individual beneficiaries, or for his estate, to be disposed of under the will. The statute permits parties to make a contract in either form. What was their intention as shown by their language? By the first clause of the conditions of the certificate, the application is expressly made a part of the contract. In the application, we find the only specific provision as to ownership in the question, " For whose benefit is this contract made (give relationship of beneficiary and full name)?" and in the answer, " Myself." The only doubt as to the construction of the contract is created by the words of the certificate in the printed blank, where the agreement of the corporation is to pay " to the executors or administrators of said member, in trust, however, for, and to be forthwith paid over to, his heirs at law." The chief purpose of this language is to state the undertaking of the corporation, and that is fully accomplished before the words " in trust" are reached. The final clause is a statement of the existence of a trust which is supposed to have been created by the designation of the insured in his application. In the present case these words are in direct conflict with the statement of ownership in the written portion of the contract, and it seems likely that they were inadvertently left in the printed blank. In the absence of anything else to show an intention to make his heirs beneficiaries, we are of opinion that the words referring to a trust must yield to the language of the application, and that the proceeds of the certificate must be administered as a part of the estate of the insured under his will.

*Decree affirmed.*