Hulda Sherman, *Adm'x, vs.* Samuel J. Howes, *Adm'r*, d. b. n. c. t. a.

JUNE 24, 1915.

Present: Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

*(1) Life Insurance. Beneficiary. "Executors, Administrators and Assigns."*

A policy of insurance was issued for the term of fifteen years, payable in case of death during said term, share and share alike to his wife and his son, or if insured survived such term, then an amount equal to four-tenths ·of the amount of the policy was to be paid to insured. During the term, the beneficiaries assigned to the insured the policy and "all dividend benefit and advantage to be had or derived therefrom," and thereafter a trust agreement was entered into between insured and the company by which in case of his death during the life of either his wife or his son, the proceeds were to be paid to the company as trustee to be held for the benefit of the wife and son and the survivor of them, to be paid to them share and share alike in annual installments, the first payment on proof of death of insured; the balance to carry interest of not less than 3%; in case of death of either beneficiary before or after death of insured, from the proceeds or the remainder thereof, like annual installments to be paid the survivor; if any balance remained after the death of both beneficiaries the same was "to be paid in one sum to the executors, administrators or assigns of insured," and in case of death of both beneficiaries before the policy became a claim, or in case insured revoked

his appointment of trustee, said appointment of trustee became void and the proceeds were to be paid "in one sum to the executors, administrators or assigns of said insured."

Insured died within the term without having revoked the appointment of trustee and the company took the proceeds under the terms of the trust.   Both beneficiaries deceased, the company having prior to that time made nine annual payments, and the company paid to the administrator of insured the balance of the proceeds.

*Held,* that after looking into the subject-matter and surrounding circumstances, as well as the language used in the contract to learn the intention of insured, there was nothing to make it necessary to deprive the words "executors, administrators or assigns" of their ordinary technical significance, and therefore the administrator took the proceeds as assets of the estate.

(2)   *Life Insurance.   Beneficiary.*

In making proceeds of an insurance policy payable to his personal representatives or his assigns, an insured reserves to himself the right to dispose of the same by will, subject to the possibility of their being needed to pay his debts.

PROBATE APPEAL.   Heard on exceptions of appellee and overruled.

BAKER, J.   On the 5th day of February, 1914, the court of probate of the town of Cumberland entered a decree modifying another decree entered by it on the 2nd day of May, 1912, on an application for the allowance of the first and final account of Samuel J. Howes, as administrator *de bonis non* with will annexed of the estate of Amos Sherman, late of said Cumberland, deceased.   From said first mentioned decree Hulda Sherman, as administratrix of the estate of Emma F. Sherman, widow of said Amos Sherman, deceased, claimed an appeal to the Superior Court.   The case was heard by the Superior Court on the sole question of whether said court of probate "had authority and jurisdiction to revoke and modify a decree allowing the first and final account" of said administrator entered May 2, 1912, when said revocation was asked for more than forty days after said May 2nd.   The decision was that the court of probate was without jurisdiction to enter the decree appealed from. The administrator excepted to said decision and brought the case to this court which sustained his exception and remitted

12

the case to the Superior Court to hear the appeal on its merits. See *Sherman* v. *Howes,* 37 R. I. 260. The appeal was heard by the Superior Court on its merits on the 13th day of January, 1915, and thereafter the court rendered a decision sustaining the appeal of said administratrix. To that decision the administrator excepted and the case is before this court on his bill of exceptions.

It appears from the testimony that on March 29th, 1911, the New York Life Insurance Company paid to Samuel J. Howes, as such administrator, the sum of $3,070.12, being the balance then due of the proceeds with accumulated interest of a policy numbered 316,183, issued May 2, 1889, on the life of said Amos Sherman. The administrator had charged himself with this sum in the account allowed May 2, 1912. By the decree of the court of probate entered February 5, 1914, the administrator was permitted to charge out this sum with interest as not being a part of the assets of the estate of Amos Sherman. The question now before the court is therefore, whether the said sum thus paid over to the administrator of the New York Life Insurance Company, with its accumulations, is a portion of the assets of the estate of Amos Sherman. The appellant claims that it is part of such estate and the appellee that it is not.

(1) To understand how this question arises a brief statement of the facts as disclosed by the evidence is necessary. In response to an application therefor by Amos Sherman, under date of April 19, 1889, the New York Life Insurance Company issued policy numbered 316,183 for $2,000, insuring his life for the term of fifteen years, commencing on the 2nd day of May, 1889, and becoming payable upon proof of the death of said insured during said fifteen years, share and share alike, to Emma F. Sherman, his wife, and Roger W. Sherman, his son, or their executors, administrators or assigns; or, if the insured should survive said term of fifteen years then an amount equal to four-tenths of said sum of $2,000 was to be paid to the insured or his assigns; thereafter under date of the 6th of January, 1898, Emma F. Sherman and Roger

W. Sherman assigned and transferred to Amos Sherman aforesaid said policy "and all dividend, benefit and advantage to be had or derived therefrom." On February 10, 1898, a trust agreement was entered into by and between the insured and said company by which in case of his death during the lifetime of either Emma F. Sherman, his wife, or Roger W. Sherman, his son, the proceeds of said policy were to be paid to said company as trustee to be held by it as part of its general funds for the benefit of said Emma F. and Roger W. and the survivor of them; the proceeds were to be paid to said wife and son, share and share alike by the trustee in annual installments of $250 each, the first installment to be payable on proof of the death of the insured; the balance was to carry annual interest at not less than 3%; in case of the death of either beneficiary before or after the death of the insured, from the proceeds or the remainder thereof held by the trustee, like annual installments were to be paid to the survivor; if any balance remained in the possession of the trustee after the death of both said beneficiaries the same was "to be paid in one sum to the executors, administrators or assigns of the insured;" and in case of the death of both the beneficiaries before the policy became a claim, or in case the insured revoked his appointment of trustee by a written notice to the company, said appointment of trustee became void and the proceeds of the policy were to be "paid in one sum to the executors, administrators or assigns of said insured."

Under date of January 11, 1898, Mr. Sherman signed a supplementary memorandum (A) in substance embodying the terms of said trust agreement and providing that this last memorandum should be taken as part of two applications for insurance (one of which was dated April 19, 1889), and subject to the agreements and warranties therein contained, and be considered as part of the basis of the contracts for insurance. This memorandum provides for the payment of the proceeds of the insurance under the two applications to his wife and son "in ten equal annual installments of five

hundred dollars each with a final installment equal to the remainder of the proceeds." While it is not entirely clear from the evidence, apparently the annual payment of $500 was to be made from the insurance resulting from both applications. The number and the amount of the annual payments mentioned in memorandum A are of no importance in considering the question before us, as Amos Sherman died September 7, 1902, before the expiration of the term of fifteen years without having revoked said appointment of trustee. Thereupon said company took and held the proceeds of said policy, amounting to $4,133.60, under the terms of the trust agreement and under date of October 2, 1902, issued a certificate of trust declaring that it held the last mentioned sum in trust for the purposes set forth in the trust agreement as they existed upon the death of the insured, with the provision that "if any balance of said proceeds remain in the possession of said company after the deaths of both of said beneficiaries the same is upon satisfactory evidence of such deaths to be paid in one sum to the executors, administrators or assigns of said Amos Sherman, deceased."

Emma F. Sherman died January 17, 1905, and Roger W. Sherman, January 5, 1911. Before the last mentioned date said company, as trustee, had made nine annual payments of $250 each in accordance with the provisions of said trust agreement. After the death of said Roger W. Sherman, Samuel J. Howes, a brother of Emma F. Sherman, was appointed administrator *de bonis non* with will annexed on the estate of Amos Sherman, and on March 29, 1911, said company, as trustee, as already stated, paid to said administrator $3,070.12 as the balance of the proceeds of said policy.

Amos Sherman in his application for insurance under said policy described himself as an "insurance agent and adjuster for Sun Fire office" and said that he had been thus employed for eight years; that at that time he held three policies in the New York Life Insurance Company, and that he held other life insurance amounting to $20,000 in other companies.

Under date of August 22, 1899, he made his last will, which was after his death duly probated, in which he made his wife, Emma F. Sherman, residuary legatee and devisee of his estate. While the will refers to two other life insurance policies it contains no allusion to the one now considered. At his death besides his wife and son he left surviving him a brother, a sister and descendants of a dead sister.

The facts last referred to are not of special importance in the present case as the only question now before the court is whether the balance of the proceeds of the policy paid by the company to appellee is assets of the estate of Amos Sherman, while the further question, if it is assets, of who is entitled to them, is not under consideration. If this money is assets of the estate, then the Superior Court was right in holding that the court of probate was in error in permitting it to be charged out of the estate. The question is a narrow one. Neither party claims that the insurance company as trustee erred in paying the money to Mr. Howes as administrator. There is, of course, no suggestion that it was intended for the administrator personally. The real controversy is as to whether he received it to be administered upon as part of the estate of Amos Sherman or, although receiving it by virtue of his being administrator, he in fact holds it not as belonging to said estate, but in trust for certain persons ascertained or ascertainable.

The determination of this question depends upon the intention of Amos Sherman. There is nothing in evidence to show that intention except the trust agreement of February 10, 1898, and memorandum A. He was, in 1898, the sole owner of the policy. In entering into the trust agreement and in signing memorandum A, he did not deprive himself of its control or of his interest therein. The appointment of a trustee was to become void at any time at his option. If his wife and son both died before him, whether the appointment of trustees had been revoked or not, the proceeds of the policy were to be paid upon his death to "his executors, administrators or assigns." If he

died before his wife and son, the appointment not having been revoked in the meantime, provision for an annual payment to them and the survivor of them was made; and if they both died, while a portion of such proceeds remained in the hands of the trustee, then the balance thereof was to be paid to "his executors, administrators or assigns." There seems to be no ground to argue that, when he directed, in the event of the death of both his wife and son before him, the proceeds of the policy upon his death were to be paid to his executors, administrators or assigns, he did not intend them to be assets of his estate for every legal purpose. He was providing for a contingency where, upon his own death, the members of his own family had predeceased him. If he desired in these circumstances to make provision in the trust agreement for other relatives out of the proceeds of this policy he could easily have done so. And when in the event that after his own death both wife and son should die without exhausting the proceeds of the policy he then directed the balance thereof to be paid to his executors, administrators or assigns, it is fairly to be inferred that it was to be treated as assets in the same manner as in the other case. The resulting situation would be the same. In both cases the three members of the insured's family would all be dead. In each instance the designated payees are the same and the conditions at the time of payment are not shown to be sufficiently different to enable the inference to be drawn that the purpose of the payment differed in the one case from the other. While Mr. Sherman's experience as a fire insurance agent and adjuster would not of necessity inform him as to some features of life insurance contracts, yet as it appears that he had before making the trust agreement taken out quite a number of life insurance policies, it may fairly be presumed that he had a good business understanding of such contracts and comprehended the significance of the words which are the subject of comment and intended to use them with (2) their ordinary meaning. In making in effect these proceeds payable to his personal representatives or his assigns it is

to be borne in mind that Mr. Sherman was reserving to himself the right to dispose of the same by will, subject to the possibility of their being needed to pay his debts.

The words "executors, administrators or assigns" used as designating the payees in insurance policies, unless qualified by other provisions or conditions, have usually been interpreted as meaning that they take the proceeds as assets of the insured's estate. In *Phœnix Mutual Life Ins. Co.* v. *Opper*, 75 Conn. 295, a life insurance policy on the life of one Koch was payable "to his executors, administrators or assigns." Three parties claimed the fund: his widow who had held a valid assignment of the policy, but had released her interest therein to permit her husband to obtain a loan on it from the company, and claimed under an alleged promise by him to reassign the policy to her; Opper, the administrator on his estate, and the receiver of his estate, although after the appointment of the receiver Koch had received his discharge in bankruptcy. It was held that the proceeds of the policy belonged to the estate.

In *Rawson* v. *Jones, Adm'r*, 52 Ga. 458, the insurance by the policy was payable to "his heirs, executors, administrators or assigns." The deceased was a young unmarried man and his heirs at law were a brother and three sisters, all older than himself, who had raised and educated him. The heirs at law claimed the fund. The insurance company paid the money, $5,000, to the administrator and took his receipt and refused a receipt from the heirs at law. A creditor sued the administrator. He pleaded no assets and *plene administravit præter*. If the proceeds of the policy were assets then the defendant had assets to pay the creditor's claim. A section of the code provided that "The assured may direct the money to be paid to his personal representatives, or to his widow, or to his children, or to his assignee; and upon such direction, given and assented to by the insurer no other person can defeat the same." The court said: "The introduction of the word 'heirs' does not affect the construction. Without it there could scarcely

be the possibility of a doubt that the personal representative, his administrator, would take the money as administrator. The terms 'heirs, executors and administrators' are not words that are used where those who are next of kin are intended to have a right given them directly by the instrument for instance, as purchasers; but are the terms usually employed to signify that if they take at all it is not directly, but through an administration. . . . The terms used in the policy by the direction of the assured, the provision in the section of the code referred to, giving him power to order to whom it should be payable, and he having used the very words which, in all other cases, disposing of property, would vest it in the administrator, as assets, and nothing to the contrary appearing in the policy, we cannot avoid the judgment we render. It is our opinion the money in the hands of the administrator is assets of the estate of the assured, to be disposed of as any other assets would be."

In *Jack* v. *Mutual Reserve Fund Life Ass'n*, 113 Fed. 49, the policy was made payable to the executors or administrators of the insured. The widow was a claimant, and one Jack also claimed as assignee. On page 59 the court says: "If the assignment is to be regarded, Jack alone, as assignee, holds the policy. If the assignment be ignored, the policy being payable to the executors or administrators of the insured, they alone could sue on it."

In *Leonard* v. *Harney*, 173 N. Y. 352, the policy issued to the deceased was payable to the insured "or to the legal representatives or assigns of said beneficiary." In his application for the insurance, to the question asking the name of the beneficiary, he wrote" to whom I may direct in my will." The insured subsequently assigned the policy as collateral security for payment of a debt. By his will he bequeathed the balance of the surplus due on the policy after satisfaction of said debt to his wife and appointed her executrix of his will. On the insured's death his widow demanded the surplus in her personal right, and a creditor notified the company not to so pay it to her. The insurance

company filed an action of interpleader. The court held that the surplus vested in her as executrix and not as beneficiary. It said: "The ordinary meaning of the term 'personal representatives' is executors or administrators and there is nothing even in the application of the insured for the policy to give that term a different construction. He asked that a policy be issued payable to the person he may nominate in his will. It might be a sufficient answer to say that such is not the policy the insurance company elected to issue to him. But, aside from that consideration, a policy which was at all times to be assignable by the deceased, and the beneficiary of which was to be designated only by will, an ambulatory instrument, susceptible of revocation or change, taking effect only on his death, would necessarily be the property of the deceased and part of his estate." . . . "The plaintiff's title was therefore only that of legatee, but as a specific legatee she was entitled to the fund except as against creditors of the estate of the deceased."

In *People* v. *Phelps, Administrator*, 78 Ill. 147, the policy was payable to the "legal representatives" of the insured. The court says, "The words 'legal representatives' in the commonly accepted sense mean administrators or executors. . . . It was competent, under our law, for the intestate to have made the policy payable to his widow or to his heirs, to the exclusion of his creditors; but this he did not do. He chose to make it payable to his 'legal representatives' and in this instance the legal representatives of the estate is his administratrix. . . . The term employed 'legal representatives' must be understood in its ordinary meaning, which is administrators or executors and cannot by construction in this case be held to include the widow and heirs to the exclusion of the administratrix. The proceeds of the policy must, therefore, be regarded as other assets coming to the hands of the administratrix and to be administered accordingly."

In *Quick* v. *Quick*, 147 N. Y. Sup. 149 (1914), it is held that legal representatives in the policy meant insured's executor or administrator and not his next of kin. In the application for insurance he had designated the recipient of the insurance by the word "estate." See, also, *Burt* v. *Burt*, 218 Pa. St. 198; *Nolan* v. *Prudential Ins. Co.*, 139 App. Div. 166; *Farretti* v. *Prudential Ins. Co.*, 49 Misc. N. Y. 489; *Harding* v. *Littlehale*, 150 Mass. 100.

It is true that courts have sometimes given a wider meaning to the words "representatives" or "legal representatives." In *Loos* v. *John Hancock Mutual Life Ins. Co.*, 41 Mo. 538, the policy was payable to the "representatives" of the insured. It was held that a child, the sole heir of the deceased, was entitled to the money instead of the administrator. The court said, "Policies for a term of life insurance of this description are of frequent occurrence, and where it is meant that the money resulting from the policy shall descend and be used as common assets the invariable language is, 'to pay to the said assured, his executors, administrators or assigns.'"

In *Griswold* v. *Sawyer*, 125 N. Y. 411, it is held that while the words "legal representatives" must have their technical meaning of administrators or executors, in the absence of anything showing a different intent, in any case to ascertain the sense in which they are used the subject-matter and the surrounding circumstances as well as language used may be considered. After stating that these words are sometimes used in statutes and decisions in a different sense, citing among other cases the last mentioned one, the court found in the surrounding circumstances evidence of the insured's intention that the insurance money in that case was not to go to his administrator, and by a divided court held that it belonged to the widow and children of the insured. In reaching its decision the court, as is pointed out in *Leonard* v. *Harney*, *supra*, attached importance to the fact that by the omission of the word "assigns" the policy was not assignable without the consent of the beneficiaries.

Both of these cases imply, however, that by the use of the words, "said assured, his executors, administrators or assigns," the proceeds of the policy would be common assets of the estate of the deceased.

Contra, in *Wason* v. *Colburn*, 99 Mass. 342 (1868), the policy issued by the John Hancock Life Insurance Co. was payable to the "assured, or, in case of prior decease, to his heirs or representatives." The deceased's sole heir was a minor son and his representative sued the administrator of the insured for the proceeds of the policy. The court said: "The policy is not expressed to be for the benefit of any third person within the meaning of Gen. St. c. 58, § 62," and decided that the administrator was entitled "to collect the amount due, and hold it as part of the estate of the intestate." After referring to and commenting on *Loos* v. *John Hancock Mut. Life Ins. Co.*, *supra*, the court further said: "In the present case the language habitually used by the company is not stated; nor would evidence be admissible of the intent with which they used the language of the policy. The term 'representatives' legally indicates administrators, and we cannot construe it as excluding them."

Undoubtedly by specification in the policy the executor or administrator may take in trust for beneficiaries, and the proceeds under such provisions are not subject to the payment of debts. 25 Cyc. 887. Thus in *Golder* v. *Chandler*, 87 Me. 63, where a policy was payable to testator's "legal representatives for his heirs and assigns," it was held that it was intended that the personal representatives were to take the proceeds in trust for other parties and not as part of his estate. See, also, *In re Wendell*, 3 How. Pr. Rep. N. S. 68.

In *Heydenfeldt* v. *Jacobs*, 107 Cal. 373, the executors of the estate of a decedent had collected the proceeds of a policy payable to his widow and children. Held, that said proceeds were no part of the estate of the deceased.

In *Mullins* v. *Thompson*, 51 Texas, 7, where the policy was payable to the "heirs or assigns" of the assured and the policy had not been assigned, it was held that the father of the

assured, who was his heir and was also the administrator on his son's estate, was not compelled to inventory the proceeds of the policy as assets of the estate.

In *Mitchell* v. *Allis*, 157 Ala. 304, the policy was payable to the executors, administrators or assigns of the insured: Held, that the fund was payable to them, but that inasmuch as the statute provided that it "shall be exempt from all creditors," it was exempt from their claims. And it is generally held that, as the object of beneficial associations is not to benefit the estates of members, but to provide funds for the benefit of their families or dependents, the proceeds of certificates of such associations are not assets in the hands of the personal representatives of the deceased.

Assuming that we may look into the subject-matter and the surrounding circumstances as well as the language used in the contract to learn the intention of the insured we find none of the conditions referred in the cases cited to exist in the present case as making it necessary or proper to deprive the words "executors, administrators or assigns" from having their ordinary technical significance. As was said by the presiding justice of the court below, these words "are the apt and proper technical words to designate the estate of the insured." . . . "It would require strong evidence of a contrary intention on the part of the assured to warrant us in giving them a different meaning." We find nothing to satisfactorily indicate the existence of such an intention.

The appellee put in evidence at the trial Chapter 347 of the Laws of New York, passed in 1879; but as the act simply relates to the surrender value of policies it is of no assistance in deciding the question now before us.

The appellee's exception is accordingly overruled and the case is remitted to the Superior Court for further proceedings.

*William G. Rich, Waterman & Greenlaw,* for appellant.

*Charles E. Tilley,* of counsel.

*James F. Murphy,* for appellee.