No. 22,309.

MAY AGNES HURD, as Administratrix with the Will Annexed of of the Estate of JENNIE E. PINKNEY, Deceased, *Appellee*, v. THE PENN MUTUAL LIFE INSURANCE COMPANY, *Appellee*, WILLIAM J. MILLER, as Administrator of the Estate of ARTHUR E. PINKNEY, Deceased, *Appellee*, and HELEN P. BACON, *Interpleader, Appellant*, et al.

No. 22,512.

MAY AGNES HURD, as Administratrix with the Will Annexed of of the Estate of JENNIE E. PINKNEY, Deceased, *Appellee*, v. THE PENN MUTUAL LIFE INSURANCE COMPANY, *Appellee*, WILLIAM J. MILLER, as Administrator of the Estate of ARTHUR E. PINKNEY, Deceased, *Appellant*, and HELEN P. BACON, *Interpleader, Appellee*, et al.

SYLLABUS BY THE COURT.

1. LIFE INSURANCE—*Ineffectual Attempt to Change Beneficiary.* The insured, who by the terms of a life insurance policy retained a right to change the beneficiary by a prescribed method, which included an indorsement on the policy, presented to the company a writing expressing his desire to make the insurance payable to his estate and also to surrender all claims on payment of the amount provided in that contingency; because of the loss of the policy, the company required an indemnifying bond as a condition to its taking favorable action on such application; while negotiations were pending with reference thereto

the insured died, without the bond having been given. In a contest between the original beneficiary and the administrator of the insured, it is held that inasmuch as the requisite steps to that end had not been taken, and the company had not acquiesced in or recognized any change of beneficiary during the life of the insured, none had taken place, and the original beneficiary was entitled to the proceeds of the policy.

2. SAME—*Written Application Made Part of Policy—Both Construed as a Single Contract.* Where a written application for life insurance is made a part of the policy issued thereon, the two are to be construed as parts of a single contract, and any seeming conflict between them is to be reconciled, if that result can be accomplished by any interpretation to which they are fairly open. Where such a policy is payable in installments and on its face designates the wife of the insured as the beneficiary, while the application provides that on the death of the wife the remaining installments shall be paid to his daughter, effect is to be given to both provisions by allowing the wife to recover the payments accruing up to the time of her death, and the daughter the remainder.

Appeal from Shawnee district court, division No. 1; ROBERT D. GARVER, judge. Opinion filed January 10, 1920. Case No. 22,309 reversed. Case No. 22,512 affirmed.

*Hugh McFarland,* of Topeka, for appellee and appellant William J. Miller; *J. D. M. Hamilton,* of Topeka, for appellant and appellee Helen P. Bacon.

*Edwin A. Austin,* of Topeka, for appellee May Agnes Hurd.

The opinion of the court was delivered by

MASON, J.: In an action upon a policy issued by the Penn Mutual Life Insurance Company to Arthur E. Pinkney, the company defended upon the ground that the insured in his lifetime had exercised an option to accept the surrender value. The district court having decided against this defense, the company did not appeal, but acquiesced in the judgment and paid into the court the amount due on the policy, for which there were several claimants. In virtue of the fact that the policy named as beneficiary Jennie E. Pinkney, the wife of the insured, who survived him about two years, her administratrix claims it. Helen P. Bacon, the daughter of the insured by a prior marriage, claims a portion of it on the ground that in the application for the insurance, which was expressly made a part of the policy, she was named as a beneficiary in

Hurd v. Insurance Company.

the event of the death of Mrs. Pinkney before payment had been completed. The administrator of the insured claims the whole amount on the ground that the beneficiary had been changed, so that the policy had become payable to Pinkney's estate. The trial court held upon the evidence (which was all in writing) that no change of beneficiary had been made, sustained a demurrer to the pleading of Mrs. Bacon, and rendered judgment in favor of the administratrix of Mrs. Pinkney. Mrs. Bacon and the administrator of the insured each appeal.

1. The policy was issued January 26, 1912. It permitted a change of beneficiary if made in writing and indorsed thereon by the company at its home office. On March 9, 1915, Pinkney presented to the company a writing declaring that he changed the beneficiary and made the policy payable to his estate, and purporting to release all claims under it in consideration of the payment of its surrender value to one of his creditors. The policy at that time had been lost, and therefore the corporation, as a condition to acting in accordance with the application, made the requirement that Pinkney should give an indemnity bond. On April 13, 1915, while negotiations with respect thereto were still pending, Pinkney died without the bond having been given.

Pinkney's administrator contends that, notwithstanding the failure of the attempt to cash in the policy at its surrender value, the part of the writing declaring a change of beneficiary should be treated as an independent matter, and should be given effect because the insured had a right to make such a change, and had (in view of the loss of the policy) done all that he could to accomplish the purpose; and that only the company, and not the original beneficiary, could complain of the omission of any of the steps prescribed in the policy. Language is used in the syllabus of a Kansas case. (*Titsworth v. Titsworth,* 40 Kan. 571, 20 Pac. 213) apparently supporting the latter part of this contention, and in conflict with the weight of authority on the subject. (Note, 2 A. L. R. 1682.) That language, however, must be interpreted in view of the facts to which it was applied. There an insurance association during the lifetime of the insured had accepted and acted

upon his application for a change of beneficiary, granted it, made the change, and issued a new certificate. On being sued by both claimants, the association paid the money into court for the benefit of whichever should prevail. In that situation it was held that the original beneficiary had no standing to attack the validity of the change on the ground that it had not been made in accordance with the rules of the association. The decision would perhaps be in point here if the company, during Pinkney's life, had unconditionally acquiesced in the change of beneficiaries, and had made the requirement for an indemnity bond solely with reference to the application for the payment of the surrender value. A part of the evidence tends to support that hypothesis, but on the whole record it is seen to be untenable. The writing referred to (the application for a change of beneficiary and for a surrender of the policy) bore an approval by an assistant actuary dated March 17, 1915, but that officer testified that this simply indicated that the *execution* of the paper was correct and satisfactory. The signature of the second vice president also appears on the document, but there is nothing to show that it was not attached after Pinkney's death. Moreover, the correspondence shows that the requirement of a bond was never withdrawn or satisfied, and was insisted upon after the date named. The assistant actuary testified that according to the company's records the policy stood payable to the insured, and in case he wanted it payable to the original beneficiary additional papers would have been required to change it back. This, however, was a mere conclusion of the witness, expressed at a time when the company was trying to have effect given to the attempted surrender. In a letter written from the home office May 7, 1915, to the Chicago agency, it was said:

"In our opinion the change of beneficiary when the surrender for the cash value was executed under date of March 9th, 1915, whereby the policy became payable to the insured for the purpose of securing the cash value of $658.37 to Vail & Sons, is effective. If we are to question this transfer, however, then title for such an amount as you might settle for in order to avoid a lawsuit would vest in Jennie E. Pinkney, widow of the insured, so that in any event the estate would not have any claim to any portion of the proceeds of this policy."

The assistant actuary also made this statement while on the stand: "Under date of March 9, 1915, our record shows the

beneficiary was changed by the insured unto his estate as by power reserved." This was literally true, but so worded as to be capable of conveying a wrong impression. The record to which reference was made·did indeed recite that the change of beneficiary (together with the surrender of the policy) was effected on March 9, 1915, but the entry itself was made, as its own terms showed, more than six months later. There is nothing in the record to bear out the idea that the company treated the application of the insured as embracing two distinct matters, and recognized the change of beneficiaries as accomplished, while demanding a bond before the surrender of the policy should be effective. The language of the letter just quoted indicates the contrary attitude. The requirement that an indemnity bond should be given appears to have applied to the matter of the change of beneficiary as well as to that of the surrender of the policy. The fact in that regard could probably have been set at rest if the form of the bond submitted by the company for execution had been shown, but the document itself was not.produced, nor was its absence accounted for, and no evidence of its contents was given. The burden of proof in this regard lay upon him who asserted, rather than upon him who denied, that a change of beneficiary had been effected.

Whatever else it was necessary for the insured to do, in view of the loss of the policy, to effect a change of beneficiary, it is clear that he must in some unambiguous way express to the company his desire therefor. The words relating to that matter were incorporated in the blank application for the surrender value by the use of a rubber stamp, and were: "I change the beneficiary of this policy and make it payable to my estate." They purported to be self-executing, but must be interpreted in view of the fact that they were selected by the company, and their immediate purpose was to do away with the rights of the original beneficiary, so that her consent to the surrender should not be necessary. They were conclusive evidence that the insured desired a change of beneficiary if the policy was to be surrendered and the proceeds paid to his creditor; but they did not prove, and indeed gave no fair reason to believe, that he desired such change as a separate and distinct matter—that if he had known that his effort to realize the

present value was to be defeated and the policy was to be continued in force, he would still have preferred to have the proceeds at his death paid to his administrator instead of to his widow. The fact that he applied at the same time and by one writing for two changes in the existing status, one being necessary if the other was to be effected, creates no presumption that he desired the first for its own sake.

2. The application for the insurance was made upon one of the company's printed forms. The questions to be answered by the applicant were arranged in one column in groups, each group being designated by a figure, and each separate question by a letter. Blanks were left in a second column for the answers, which were sometimes printed in part. The question designated as 3 A. read: "Give the name and postoffice address of the person for whose benefit the insurance is proposed in the event of your death." In the corresponding place in the second column was printed "A. . . . if the said beneficiary outlives me, otherwise to my estate." In the blank just indicated were written the words: "Jennie E. Pinkney, Kansas City, Mo." At the foot of the applicant's questionnaire, below his signature, two footnotes were written, the second reading: "*3A. After death of ben., remaining installments to my daughter, Helen Bacon, wife of Chas. M. Bacon, Chicago." The policy began with the clause: "In Consideration of the Application for the Trust Certificate Policy, which is made a part hereof." The beneficiary was thus designated: "Jennie E. Pinkney, his wife, if she survive him, otherwise to his executors, administrators or assigns." The payments in the event of Pinkney's death were to be made in quarterly installments of $187.50 each, extending over a period of twenty years, no beneficiary having power of commutation, although in case of the death of the person to whom the installments were payable, an option of commuting was given to the legal representatives of such person.

We regard the provision that the application is made a part of the policy as requiring the two writings to be treated as portions of a single contract, and any seeming inconsistency to be resolved by the aid of all the light shed upon the real intention of the parties by the consideration of everything found in either which is pertinent to the matter. If the

policy stood alone—that is, if the application were not made a part of it—there could be no doubt that the wife of the insured was the sole beneficiary, and that if she died after him, and before the full payment had been made, any remaining amount would go to her administratrix if she died intestate without having made a transfer. But to give this effect to the document as it stands would be to ignore the terms of the application, which provides, in as explicit language as could be employed, that in such a situation the remaining payments should be made to Mrs. Bacon, the daughter of the insured. There is no absolute and irreconcilable conflict between the two portions of the contract. Effect can be given to every provision of both. The policy, exclusive of the application, does not expressly say that installments accruing after the death of Mrs. Pinkney shall be payable to her administrator. She could personally have the benefit only of such installments as should mature during her lifetime. The added provision of the application making these subsequent installments payable to Mrs. Bacon does not contradict the other terms of the contract—it supplements them; it at most qualifies them. It gives a specific and express direction concerning a matter which otherwise would be controlled by general and implied provisions. If Pinkney's widow had outlived him by twenty years she would have been entitled to all the proceeds of the policy, and there would have been no need to look beyond the broad language embodied in the first page of the contract. Her death within that period gave opportunity to apply the special proviso elsewhere found, framed to meet that contingency.

It is true, as contended by the appellee, that a duty rested on the insured, if he discovered that the policy given him did not comply with his application, to advise the company of the fact, if he did not choose to abide by the change. But with the application made a part of the contract it cannot be said that he was bound to look only to the face of the policy, or to act upon the theory that there was a conflict between it and the attached portion.

In the argument in support of the view which was taken by the trial court, that the administratrix of Mrs. Pinkney

was entitled to the whole of the proceeds of the policy, much reliance is placed upon *Burt, Appellant, v. Burt,* 218 Pa. St. 198. There a similar policy was on its face made payable to the insured, his executors, administrators, or assigns. The application, which was made a part of the policy, designated the beneficiary in these words: "Self if living, if not equally divide among my 2 nephews, 2 nieces, Flora Burt, John Burt, Jr., . . . children of John T. Burt." (p. 200.) The insured died before the maturity of the policy, and the trial court held that the beneficiaries named in the application were entitled to its proceeds. The judgment was reversed on appeal, one justice out of five dissenting. That decision was rendered in 1907, and as the Penn Mutual Company is a Pennsylvania corporation, the suggestion is made that the interpretation of the present policy is controlled by it. The construction of the contract does not involve the application of any local law, but the ascertainment of the real intention of the parties. Moreover, we do not regard the case as directly in point, because there an absolute conflict existed between the policy and the application, while here, as already stated, the seeming conflict can be reconciled by an interpretation to which the language used is open. It cites but one authority (*Hunter v. Scott,* 108 N. C. 213), which interpreted a policy of which the application was not made a part, and therefore could have but little bearing on the question involved. It seems to be based on the supposition, which we cannot regard as sound, that the sole purpose of referring to the application in the policy was to hold the insured to the warranty of the truthfulness of his answers, and to prevent any dispute as to the representations on faith of which the policy had been issued. It is annotated in 11 Ann. Cas. 708, and in our judgment is not sustained by the cases there collected. In several of them the application was not made a part of the policy; in others, where the contrary was true, a provision of the policy was held to control in case of conflict, but the reason, or at all events a reason, given was that the contract was ambiguous and should be construed most strongly against the company, the question involved being of a kind to make that rule applicable. (*Moulor v. American Life Ins.*

*Co.,* 111 U. S. 335; *Harr v. Highland Nobles,* 78 Neb. 175; *Logan v. Assurance Society,* 57 W. V. 384; *Goodwin v. Assurance Association,* 97 Ia. 226.) In still others, provisions of the application were allowed to prevail over those of the policy. Other cases of that character or tendency, not cited in the note, are *Eckler v. Terry,* 95 Mich. 123; and *Harding v. Littlehale,* 150 Mass. 100.

Moreover, the proceeds of the policy in the Burt case were not disposed of in the manner indicated in the decision referred to. The supreme court, as there shown, ordered judgment for the executrix of the insured, but this order was later set aside and a new trial was allowed. This resulted, as the first one had, in a judgment for the beneficiaries named in the application, which was affirmed on a second appeal. (*Burt, Appellant, v. Burt,* 221 Pa. St. 171.) The opinion speaks of a mistake in writing the policy, but the reference does not seem to be to a situation in which under the practice elsewhere reformation of a contract is granted on account of a mutual mistake, for the decision appears to be based on the peculiar Pennsylvania rule which in some circumstances allows convincing parol evidence to vary a written instrument. (4 Wigmore on Evidence, § 2431, p. 3429.) The final result of the litigation, in whatever terms expressed, gave effect to the real intention of the parties, as exhibited in the application, supplemented by oral evidence.

In *Ogletree v. Hutchinson,* 126 Ga. 454, the application was not in terms made a part of the policy. Even in this situation, it was held that the two writings should be construed together, and as no beneficiary was named in the policy, the person designated in the application was entitled to the proceeds. It was said, however, that if there had been a conflict the policy would have controlled.

The appellee also contends that the application itself is ambiguous as to the beneficiary; that the marginal note is not a part of the application, and is inconsistent with it; and that in that situation the first provision should control, and the last be rejected. We think the application makes it entirely clear that Pinkney desired his daughter to receive the proceeds of the policy in case his wife should die before its payment was completed.

The judgment so far as it excludes Pinkney's administrator from an interest in the proceeds of the policy is affirmed. The order sustaining a demurrer to the pleading of Mrs. Bacon is reversed, and the cause is remanded for further proceedings in accordance herewith.