## SCHMITT v. MASSACHUSETTS PROTECTIVE ASS'N, Inc.*

## MASSACHUSETTS PROTECTIVE ASS'N, Inc., v. SCHMITT.

Circuit Court of Appeals, Eighth Circuit.
March 19, 1929.

Nos. 8152, 8212.

J. W. Schmitt, of Mankato, Minn., and Charles Bunn, of St. Paul, Minn. (C. J.

*Rehearing denied June 21, 1929.

Laurisch, of Mankato, Minn., on the brief), for plaintiff.

George Hoke, of Minneapolis, Minn. (Tracy J. Peycke, of Minneapolis, Minn., and F. H. Nash, of Boston, Mass., on the brief), for defendant.

Before VAN VALKENBURGH and BOOTH, Circuit Judges, and MUNGER, District Judge.

MUNGER, District Judge. The plaintiff had a verdict and judgment in an action upon two policies of insurance insuring the plaintiff against the loss of his time from accident or disease. Both parties have appealed. The only questions that may be considered relate to the granting of a part of the plaintiff's motion for a directed verdict. By that motion the plaintiff asked: First, that the court should direct a verdict for the plaintiff for $17,581.91, the total of all the amounts claimed in his complaint, with interest; second, that if that request should be denied a verdict should be directed for the plaintiff for $15,981.91, a deduction of $1,600 from the amount first requested; third, that if the first and second requests should be denied, a verdict should be directed for the plaintiff for $4,685.77; and, fourth, that if the first, second, and third requests should be denied, a verdict should be directed for the plaintiff for $3,942.34. The court granted the third request in substance. The plaintiff excepted to the denial of his first and second requests. The defendant excepted to the granting of plaintiff's motion for a directed verdict and assigns that ruling as error. The only claim made in support of the defendant's appeal is that it was erroneous to direct a verdict for the plaintiff in any amount. A number of other questions are presented in the briefs and arguments relating to the proper construction of the policies, but they are not founded upon any rulings made by the court, over objections made.

The defendant issued two policies of insurance payable to the plaintiff. There is no question made in this case that his disabilities bring him under the terms of the policies. The first policy contained these provisions:

"A. Total Disability From Accident or Disease. If any injury or disease result in continuous total disability requiring the regular and personal attendance of a licensed physician, the Association will pay during the continuance of such disability One Hundred Dollars per week as hereinafter limited."

"C. Additional Benefits for Serious Disabilities. If any injury or disease results in continuous total disability lasting for more than four weeks the Association will for the remainder of the period during which the insured is under the regular and personal attendance of a licensed physician and totally disabled by accident or confined to the house by disease, pay in addition to the indemnity provided in Clause A the further sum of One Hundred Dollars per week, as hereinafter limited."

"D. Hospital Confinement or Care of Nurse. If during any period for which indemnity is payable under Clause A or C above the insured is confined within an incorporated hospital or is under the care of a registered nurse, an additional indemnity of Fifty Dollars per week shall be payable during such period of hospital confinement or nurse's attendance, for not exceeding twenty-six weeks as hereinafter limited."

"E. The Association agrees that during the term of this policy the sole condition for its Continuance shall be the timely payment by the insured of the premiums hereon."

"7. Affirmative proof of loss must be furnished to the Association at its said office within ninety days after the termination of the period of disability for which the Association is liable."

"8. The Association shall have the right and opportunity to examine the person of the insured when and so often as it may reasonably require during the pendency of claim hereunder, and also the right and opportunity to make an autopsy in case of death where it is not forbidden by law."

"10. Upon request of the insured and subject to due proof of loss one-half of the accrued indemnity for loss of time on account of disability will be paid at the expiration of each sixty days during the continuance of the period for which the Association is liable, and any balance remaining unpaid at the termination of such period will be paid immediately upon receipt of due proof."

"11. All indemnities of this policy are payable to the insured."

"G. The weekly indemnity provided for in Clause A of this policy for disability caused by accidental injuries shall be paid so long as the insured lives and suffers continuous total disability from the date of the accident. Otherwise, weekly indemnities for disabilities caused by accident or disease shall not collectively cover periods exceeding sixty (60) weeks. The term 'total disability,' whenever used in this policy, shall mean inability to engage in any gainful occupation."

"M. The premium on this policy shall be One Hundred Forty-Eight Dollars per quarter, payable in advance on or before the first

day of March, June, September and December in each year. This policy is issued in consideration of * * * the policy fee of One Hundred Forty-Eight Dollars, which will carry the insurance hereunder until the first quarterly premium date as above following the issuance hereof, and may be continued from period to period throughout its term at the option of the insured by the payment of the premium in advance. Premiums may be paid annually, semi-annually or quarterly on any premium date as the insured may elect."

"Continuous Disability Rider.

"For total disability resulting from disease, arising prior to the insured's sixtieth birthday and before the expiration of the sixty weeks described in Clause G of the attached policy, the weekly indemnity provided by said policy shall continue to be payable to the insured beyond said sixty weeks, so long as he thereafter lives and is continuously totally disabled and necessarily confined within the house under the care of a licensed physician. Total disability due to tuberculosis, paralysis, blindness, insanity, paresis, cancer or locomotor ataxia shall however be construed as confining sickness hereunder irrespective of whether or not the insured be strictly confined within the house.

"In all other respects the terms, provisions and conditions of said Policy remain the same."

The second policy for a different amount and with a different premium insured the plaintiff against loss resulting while the policy was in force from disability by disease, and contained substantially similar provisions (except as to clause C above quoted), and with the exception that clause 10 provided for the regular payment of all of the accrued indemnity at the end of each four weeks of disability. The plaintiff's disability began June 5, 1925, and has continued ever since. In September, 1925, he brought suit in the state court against the defendant for the loss which he claimed he had sustained under the policies for a period of eight weeks of disability under the first policy and of six weeks disability under the second policy, and recovered a judgment, which was affirmed by the Supreme Court of Minnesota. Schmitt v. Mass. Protective Association, 170 Minn. 60, 212 N. W. 5. In April, 1927, this judgment was paid by the defendant. Payment was also made to the plaintiff of one-half of the accrued indemnity as provided by clause ten of the first policy, arising after the date covered by the judgment and down to the end of the nearest sixty-day period prior to May 1, 1927, and all accrued indemnity under the second policy down to the expiration of the period of payment next prior to May 1, 1927. These payments were made pursuant to a stipulation of the parties reserving rights to each of them to make certain contentions of asserted legal rights, if another suit were brought upon the policies. The defendant now asserts, in support of its assignment of error founded upon its exception to the granting of a directed verdict, that at the time the plaintiff brought his action in the state court, the defendant had repudiated all liability under the policies, and that the plaintiff was therefore entitled to recover, in that action, for any and all liability of the defendant under the policies, and that the judgment in that action merged in it all rights of recovery under the policies under principles stated in such cases as Federal Life Ins. Co. v. Rascoe (C. C. A.) 12 F. (2d) 693, 696; United States v. Leffler, 11 Pet. 86, 100 (9 L. Ed. 642); Watkins v. American Nat. Bank (C. C. A.) 134 F. 36, 38; Pakas v. Hollingshead, 184 N. Y. 211, 216, 77 N. E. 40 [3 L. R. A. (N. S.) 1042, 112 Am. St. Rep. 601, 6 Ann. Cas. 60]. The effect of the judgment in the state court as a satisfaction of the defendant's liabilities under these policies does not properly arise on this record. After the judgment was paid and after the payments had been made under the stipulation that has been mentioned, the defendant made written demands upon the plaintiff, under each of the policies, as follows:

"You are hereby notified that in the event you desire that Ideal Policy No. 426913 issued to you, Aaron F. Schmitt, by The Massachusetts Protective Association, Inc., August 15, 1924, be regarded as having been in force up to the present time, that you pay the premiums thereon from September, 1925, to March 1, 1927, amounting to Ten Hundred Thirty-six Dollars ($1036.00), and in the event that you desire to keep said policy in force in the future, that you pay the premiums provided by said policy each quarter in accordance with the terms thereof.

"Demand is hereby made upon you that you, Aaron F. Schmitt, pay to The Massachusetts Protective Association, Inc., the sum of Three Hundred Six and 25/100 Dollars ($306.25), the amount of the seven (7) quarterly premiums from September, 1925, to March 1, 1927, upon Perfection Policy #451484 issued by said The Massachusetts Protective Association, Inc., to Aaron F. Schmitt, May 15, 1925, and that you make payment in future of the premiums upon

64

said policy as therein provided as the same accrue quarterly in the future."

█ In pursuance of these demands the plaintiff paid to the defendant the premiums demanded, and also paid the premiums due for the next ensuing quarter year, and the defendant accepted and retained the premiums. There were subsequent negotiations as to later premiums, which are not of importance in the consideration of the assignments of error. A policy of insurance may be reinstated by a new contract between the parties. Equitable Life Assur. Soc. v. McElroy (C. C. A.) 83 F. 631, 639; Wastun v. Lincoln Nat. Life Ins. Co. (C. C. A.) 12 F. (2d) 422, 425; 37 Corp. Jur. 495.

█ The demand made by the defendant on the plaintiff was not only for the payment of premiums for the period for which an adjustment of a part of the claimed losses had been made, but was also for the payment of future premiums in case the plaintiff desired to keep the policies in force in the future. The plaintiff complied with this demand, paid $1,442.25 representing the premium to March 1, 1927, and in addition paid the quarterly premiums due June 1, 1927, in advance as required by sections M and O of the policies for continued insurance from June 1 to September 1, 1927, under both policies. The parties were free to make a contract of reinstatement of the policies and the effect of the demands by defendant and the payments by plaintiff was to reinstate the policies of insurance, as new contracts between the parties. The facts in Pennsylvania Lumberman's Mut. Fire Ins. Co. v. Meyer (C. C. A.) 126 F. 352, 353, made a case quite similar in principle. An insurance company contended that it had canceled the policy before loss. Subsequently the company wrote the insured a letter in which it stated:

"We regret we cannot see our way clear to allow this matter to run along any further unpaid on our books, so if you still desire these policies to again be put in force we ask you kindly to send us check for the full amount by return mail."

The insured sent the amount demanded. The court said:

"The letter of May 23d contained an explicit agreement by the defendant to reinstate the policies if the check for the premiums was mailed. The offer of the defendant was accepted by the plaintiff. When the check was deposited in the mail pursuant to this agreement to reinstate the policies, the plaintiff did all in his power to comply with defendant's offer. The minds of the parties met; the agreement was consummated."

█ The continuance of the disability of the plaintiff after the reinstatement of the policies is conceded. In view of these facts, there was no error in directing a verdict in favor of the plaintiff for some amount.

█ The plaintiff's appeal is founded upon the rejection of his two motions each of which asked for a directed verdict in a specific amount. The amount mentioned in the first motion was based upon the theory that the first policy required the payment to the plaintiff, at the end of each sixty days' disability, of all the insurance which would ever be payable under the policy for that sixty days of disability. The second motion was based upon the theory that the defendant should pay at the end of the first sixty-day period of disability one-half of the total amount ultimately payable for that period, and that the amount payable at the end of any subsequent sixty-day period should be ascertained by first adding what was left unpaid at the time of the prior payment to the whole amount of insurance earned in the last preceding sixty-day period and then taking one-half of this sum. This half would be the amount payable at once to the insured. The statutes of Minnesota prescribe the form of policies of insurance of this kind. 1 Mason's Minn. Stats. (1927), § 3417. These statutes provide that the policy shall contain:

"(10) A standard provision relative to periodical payments of indemnity for loss of time on account of disability, which provision shall be in the following form, and which may be omitted from any policy not providing for such indemnity. The insurer shall insert in the first blank space of the form, appropriate language to designate the proportion of accrued indemnity it may desire to pay, which proportion may be all or any part not less than one-half, and in the second blank space shall insert any period of time not exceeding sixty days.

"10. Upon request of the insured and subject to due proof of loss * * * accrued indemnity for loss of time on account of disability will be paid at the expiration of each * * * during the continuance of the period for which the insurer is liable, and any balance remaining unpaid at the termination of such period will be paid immediately upon receipt of due proof."

In pursuance of these requirements, the second policy issued to the plaintiff in its clause (10) provided for the payment of "all" accrued indemnity at the expiration of each four weeks of disability, but the first policy in its clause (10) provided for the payment of only "one-half" of the accrued

indemnity at the expiration of each sixty days of disability. Paragraphs A and C of the first policy each provided for the payment of a certain sum per week "as hereinafter limited," and both these clauses preceded "Standard Clause 10" in the policy. The "Continuance Disability Rider" stated that "the weekly indemnity provided by said policy" shall continue to be payable for an extended period. Giving the proper effect to the words "as hereinafter limited" contained in clauses A and C and to "the weekly indemnity provided by said policy" in the "Continuous Disability Rider," the amounts payable and the times when they are payable must be ascertained by a construction of the terms of "Standard Clause 10." This clause contains a limitation, in that it provides for the payment (on request and after proofs are furnished) of one-half of the accrued indemnity for loss of time.

The first motion of the plaintiff, requiring the payment at the end of each sixty-day period of all indemnity earned under the first policy, necessarily was based on the theory that both the first and second policies had the same meaning, although one provided for the payment at the end of each period of one-half, and the other of all the earned indemnity for that period mentioned in the policies. The plaintiff admits that this construction of clause 10 is contrary to its obvious meaning, but he asserts that there is a conflict of meaning between that clause and the "Continuous Disability Rider" and that the latter should prevail. The conflict is said to arise because, by the terms of the rider, the indemnities which it provides are to be paid to the insured, that the plaintiff is suffering from an incurable disability, and that if half of the indemnities can be withheld until the end of the period of disability, as provided by "Standard Clause 10," that portion of the indemnities can never be paid to the insured. It is claimed that the provision for payments to the insured requires that the payments should be made to him personally. It is to be noted that Standard Clause 11 makes all the indemnities of the policy, not only those provided by the rider, but all others, payable to the insured, so that there is no conflict in meaning as to the payee between the rider and other portions of the policy. If the construction contended for were adopted, the insurer would be relieved in any case where the insured died from making any further payments, although the insured might have been disabled and entitled to indemnities, and could have collected them if he had lived, because the payments could not be made to the

insured personally. When clause 11 is read in connection with clause G and with "Standard Clause 10" and the "Continuous Disability Rider," there is no conflict nor doubt as to the beneficiary of any of the indemnities. The indemnities are payable to the insured, if he is living, and any unpaid amount due to him at the time of his death is payable to his executor or administrator. Union Mut. Life Ins. Co. v. Stevens (D. C.) 19 F. 671, 676; Harding v. Littlehale, 150 Mass. 100, 104, 22 N. E. 703; Brierly v. Equitable Aid Union, 170 Mass. 218, 220, 48 N. E. 1090, 64 Am. St. Rep. 297; 23 Corp. Jur. 1130; 25 Cyc. 886.

It is also urged that this construction of the "Continuous Disability Rider" should be adopted, or that the construction of clause 10, as presented by the plaintiff's second motion, should be adopted, because the purpose of this policy was to provide a disabled person with a fund to replace the earnings that he had lost; that it is a hardship to deprive him during his disability of half of the amount which the insurer must ultimately pay, and that it is a benefit to the insurer to retain half of the indemnities, without liability for interest thereon; and that these objections have peculiar force when the disability will continue for a long time. The first portion of clause G plainly contemplated a possible continuance from an accidental injury of a disability as long as the insured should live; the continuous disability rider contemplated a similar possible continuance as the result of disease, of a disability as long as the insured should live. The possible length of the periods of disability therefore must have been in the minds of the parties, but the supposed hardships may be as keenly felt in the case of a short period of disability as in the case of a long-continued sickness. There may be other reasons for the dividing of the payments, such as a lower premium cost, or because of a desire to accumulate a fund to be available at the end of the disability or in case of death. The purposes may vary according to the plans of the persons procuring the insurance. The statute of Minnesota which has been quoted expressly allows contracts of insurance providing for the payment of a part of the total amount of insurance earned, at the date of each periodical payment, and the withholding of the remainder.

It has often been pointed out that all insurance policies are limited and that the scope of the indemnity purchased is primarily a matter for the consideration of the parties at the time of entering into the contract.

If the terms of the contract are clear and unambiguous, those terms must govern. Consideration has been given to the various arguments made, but the conclusion has been reached that the obligation of the insurer, under the first policy, was to pay to the plaintiff, at the end of each sixty-day period (upon request and after proofs have been furnished), one-half of the accrued indemnity earned in the preceding sixty-day period, during the continuance of the period for which the insurer was liable, and that the insurer was entitled to retain the other half of the indemnities earned by the plaintiff, until the expiration of the total period for which the insurer was liable. At the expiration of that period of liability the retained halves of indemnity were payable, together with any other balance unpaid under the policy.

The judgment will be affirmed.